UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| AMANDA JO WHITT | CIVIL ACTION NO. 07-0349 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| KITCHEN COLLECTION, INC. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 12) filed by defendant, Kitchen Collection, Inc. ("Kitchen Collection"). Kitchen Collection moves for summary judgment, arguing that plaintiff's claim for gender and pregnancy discrimination are without merit as a matter of fact and law. Plaintiff, Amanda Jo Whitt ("Whitt"), opposed the Motion for Summary Judgment. See Record Document 16. For the reasons which follow, the Motion for Summary Judgment is **GRANTED**.

**BACKGROUND**

Kitchen Collection owns and operates a kitchenware store in Bossier City, Louisiana, at the Louisiana Boardwalk. On January 6, 2006, Whitt was hired as a part-time sales associate by Kitchen Collection at the Boardwalk store. On or about January 24, 2006, Whitt advised the Store Manager, Mischelle Smith ("Smith"), that she was pregnant. In mid-February 2006, Smith offered Whitt a promotion to the position of third key manager. Whitt accepted the promotion.

Thereafter, Whitt experienced various pregnancy-related medical issues, such as morning sickness, nausea, and dehydration. In early March, Whitt was hospitalized due to some of these medical problems. Smith accommodated Whitt by allowing her time off and/or adjusting her work schedule. For instance, at the end of March, Whitt was

scheduled to work seven days for store inventory. See Record Document 12, Deposition of Whitt at 21. She asked Smith for the sixth day off because she was "really tired." Id. at 22. Smith granted the leave and arranged for another employee to take Whitt's place. See id. In March, Smith and Whitt discussed Whitt going on reduced hours sometime in the future "when the time was right." Id. at 21.

On Thursday, April 27, 2006, Whitt was scheduled to work from 2:00-9:00 p.m. See Record Document 12, Deposition of Whitt at 24. She had previously advised Smith that sometime during her work shift on April 27th she would need to go to the airport to pick up her husband. Id. Smith approved the absence, with certain conditions. Id. Smith informed Whitt that she would need to come into work, then go get her husband, and then return to work. Id. Whitt did not report to work on Thursday, April 27, 2006. Id. Whitt maintains that she attempted to telephone Smith on April 27th, but got no answer at the Boardwalk store or at Smith's home. See Record Document 16-3, ¶ 10; Record Document 12, Deposition of Whitt at 24. However, it is undisputed that Whitt did not reach anyone to advise that she would not be coming to work on April 27th. See id.; Record Document 12, Deposition of Whitt at 24, 44.

On April 28, 2006, Smith completed a "Reason for Leaving" form pertaining to Whitt's termination. See Record Document 12 at 30. The reason for termination was listed as "other" and the reason for leaving was explained as follows:

> No call no show - 4/27/06. Due to work from 2 pm - 9 pm. She did not show up. And she did not call to tell me she would not be here for her scheduled shift.

Id. Smith signed the form on April 28, 2006. Id. Whitt signed the form on May 5, 2006. Id. She maintains that she signed the form to receive her last paycheck. See Record

Page 2 of 10

Document 16-2, ¶ 8.

In 2006 and 2007, several other Kitchen Collection employees, both male and female, at the Boardwalk store had been terminated for no call, no show. See Record Document 12, Smith Deposition at 41-42. Smith stated in her deposition that there had been no cases where an employee who violated the no call, no show policy was not terminated. See id. at 41. She further stated that none of these employees had ever been rehired. See id. at 42.

At the time of her termination, Whitt was in her probationary period. See Record Document 12, Deposition of Smith at 71. Smith explained the probationary period as follows:

> That's the time whenever we're able to see if the employees are going to perform their duties as needed. . . . It's the chance to see whether or not they're going to be on time to work, show up, doe their job duties as necessary.

Id. at 71-72. Smith further provided that as store manager, she could discharge employees during their probationary periods for lesser type offenses than permanent employees. See id. at 72. She also stated that the Kitchen Collection policy regarding an employee's probationary period was set forth in the employee handbook and that she tried to go over this policy with new employees. See id.

The EEOC issued a right-to-sue letter on November 20, 2006. See Record Document 1, ¶ 2. Whitt filed suit on February 23, 2007, alleging gender and pregnancy discrimination under both state and federal law. See id. Kitchen Collection answered on April 30, 2007, arguing, *inter alia*, that legitimate, non-discriminatory reasons existed for all personnel decisions relating to Whitt. See Record Document 8. Kitchen Collection filed

the instant Motion for Summary Judgment on February 15, 2008, seeking dismissal of all of Whitt's claims. See Record Document 12. Whitt has opposed the Motion for Summary Judgment. See Record Document 16.

## LAW AND ANALYSIS

**I.     Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

II.    **Pregnancy and Gender Discrimination.**[1]

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The first clause of the Pregnancy Discrimination Act ("PDA") amended Title VII such that the term "because of sex" included, but was not limited to, "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The second clause of the PDA further provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work." Id. Yet, the PDA does not "protect a pregnant employee from being discharged for being absent from work even if her absence is due to pregnancy or to complications of pregnancy, unless the absences of nonpregnant employees are overlooked." Laxton v. Gap Inc., 333 F.3d 572, 577 (5th Cir. 2003), citing Stout v. Baxter Healthcare Corp., 282 F.3d 856, 860 (5th Cir.2002) and Wallace v. Methodist Hospital System, 271 F.3d 212, 223 (5th Cir.2001) (noting that the PDA requires an employer to ignore an employee's pregnancy, but not her absence from work, unless the employer overlooks comparable absences of non-pregnant employees).

---

[1]"Louisiana's anti-discrimination law is substantively similar to the federal statute"; thus, the analysis of both the state and federal law claims of discrimination are the same. Brittain v. Family Care Services, Inc., 34,787-CA (La.App. 2 Cir. June 20, 1001), 801 So.2d 457, 461. Further, Whitt makes no argument for gender discrimination separate from pregnancy discrimination.

A PDA claim is analyzed like any other Title VII discrimination claim, which can be established through either direct or circumstantial evidence. See Laxton, 333 F.3d at 578 (citations omitted). Whitt's case is based on the latter, thus her claim is analyzed under the familiar McDonnell Douglas framework. See id., citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973). "Under this framework, the plaintiff must first create a presumption of discrimination by making out a prima facie case of discrimination." Id. (citation omitted). "The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for her termination," which "causes the presumption of discrimination to dissipate." Id. "The plaintiff then bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status." Id.

To establish a prima facie case of discrimination in the context of Title VII, as amended by the PDA, the plaintiff must show: (1) she was a member of a protected class, (2) she was qualified for the position she lost, (3) she suffered an adverse employment action, and (4) that others similarly situated were more favorably treated. See Willis v. Coca Cola Enterprises, Inc., 445 F.3d 413, 420 (5th Cir. 2006); Stout, 282 F.3d at 859-860; Urbano v. Continental Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998); Holden v. Alliance Compressors, L.L.C., No. 05-0984, 2006 WL 2356024, *3 (W. D. La. Aug. 14, 2006); Rhodes v. Rouse's Enterprises, L.L.C., No. 03-1383, 2004 WL 1857649, *2 (E.D. La. Aug. 18, 2004). There is no dispute that Whitt has established the first 3 elements of her prima facie case, as she was pregnant, was qualified for her position, and was terminated. However, Kitchen Collection argues that its motion should be granted because she has failed to establish the fourth element – that others similarly situated were more favorably

treated.  The Court agrees.

The record is devoid of any evidence that Whitt was treated any differently that any other employee who failed to comply with Kitchen Collection's no call, no show policy. Kitchen Collection has demonstrated that it terminated all employees who violated the no call, no show policy.  Specifically, Smith stated that in 2006 and 2007, several other employees, both male and female, had been terminated for no call, no show and that there had been no cases where an employee who was a no call, no show was not terminated. See id. at 41-42.  "Under the PDA, an employer is obliged to ignore a woman's pregnancy and to treat the employee as well as it would have if she were not pregnant." Urbano, 138 F.3d at 206.  Under this rationale, Kitchen Collection was entitled to terminate Whitt for violation of the no call, no show policy as long as it treated similarly affected, but nonpregnant employees, the same.  See id.  "Without a showing that [Kitchen Collection] adhered to the requirements of [its no call, no show] policy only in cases involving its pregnant workers, [Whitt] cannot maintain that she was a victim of discrimination under the PDA." Id.  Again, Smith specifically mentioned both male and female employees who were terminated due to the no call, no show policy.[2]   The record evidence establishes that violation of the no call, no show policy required termination, whether the employee was male or female, pregnant or not.  Accordingly, summary judgment is appropriate because Whitt has simply failed to come forward with any credible evidence to create an issue of

---

[2] Smith specifically mentioned Dina Gatson, Anthony Rachal, Davin Dunn, Donna Hyde, and Kyle Sherman.  See Record Document 12, Smith Deposition at 41-42.

fact with respect to the fourth element of her prima facie case.[3]

### III. Constructive Discharge.

In paragraph 12 of the complaint, Whitt alleges that she was constructively discharged. See Record Document 1, ¶ 12. Likewise, in opposing the Motion for Summary Judgment, Whitt maintains that she had decided before April 27th to leave her employment with Kitchen Collection because of reduced hours and rate of pay. See Record Document 16-2. Whitt also alleges that she "was driven from her job" due to lowered hours. See Record Document 16 at 1.

Kitchen Collection has moved for summary judgment on all of Whitt's gender and pregnancy discrimination claims. Kitchen Collection specifically addresses the constructive discharge issue in its reply brief stating:

> Whether a strategic decision or not, if Plaintiff were to pursue the theory that she quit before being terminated, she would have the burden of demonstrating that she was "constructively discharged," a burden she could not meet.

Record Document 17 at 4, n. 6. Kitchen Collection also quotes Whitt's deposition

---

[3]Kitchen Collection also argued that summary judgment was appropriate because Whitt could not demonstrate that its legitimate, non-discriminatory reason for her termination was pretext. The Court did not reach this issue because of its finding that Whitt could not establish her prima facie case of discrimination. Notwithstanding, it appears that Whitt's pretext argument also fails based on, *inter alia*, the "same-actor" inference. Here, Smith not only hired Whitt, but also promoted her even after learning that Whitt was pregnant. See Record Document 12, Whitt Deposition at 12-13, 15-17; Smith Deposition at 17. Smith was also the individual who terminated Whitt for her violation of the no call, no show policy. See Record Document 12 at 30. Thus, pursuant to the "same actor" theory, the inference in this case is that discrimination was not the motive behind Whitt's termination. See Sreeram v. LSU Medical Center-Shreveport, 188 F.3d 314, 321 (5th Cir. 1999), citing Brown v. CSC Logic, Inc., 82 F.3d 651, 657 (5th Cir. 1996) (expressing approval of "same actor" inference whereby fact that individual who allegedly discriminated against plaintiff was the same individual who hired plaintiff gives rise to an inference that discrimination was not the motive behind plaintiff's termination).

testimony, wherein she rejected a constructive discharge claim:

Q. So the question is, are you trying to claim in this case that you quit before you were terminated or you were terminated?

A. I was terminated. I didn't quit before.

Record Document 17, Whitt Deposition at 43.

To prove constructive discharge, "a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel *compelled to resign*." Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div., 512 F.3d 157, 167 (5th Cir. 2007 (internal citations and quotations omitted) (emphasis added); Barnes v. Greater Waco Chamber of Commerce, No. 07-50379, 2007 WL 4232998, *2 (5th Cir. Dec. 3, 2007) ("According to the Supreme Court, under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes."). The Fifth Circuit has defined "constructive discharge" as "a termination of employment brought about by making the employee's working conditions so intolerable that the employee feels compelled to leave." Barnes, 2007 WL 4232998, *2, citing Black's Law Dictionary, 475 (7th ed. 1999).

Based on the aforementioned case law, any claim for constructive discharge asserted by Whitt fails as a matter of law. She admitted in her deposition that she was terminated and did not quit or resign before her termination. See Record Document 17, Whitt Deposition at 43. Accordingly, summary judgment is granted as to any constructive discharge claim.[4]

---

[4] On May 30, 2008, Kitchen Collection filed a Motion in Limine (Record Document 20) seeking to exclude and/or limit any evidence or argument by Whitt that she was constructively discharged from employment. In light of the instant Memorandum Ruling,

**CONCLUSION**

The Court finds that Whitt has failed to create a presumption of discrimination by making out a prima facie case of discrimination. Specifically, she has failed to establish that others similarly situated were more favorably treated. Moreover, any claim for constructive discharge asserted by Whitt fails as a matter of law.

Accordingly, the Motion for Summary Judgment (Record Document 12) filed by Kitchen Collection is granted and all of Whitt's claims are dismissed with prejudice. A judgment consistent with the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 4th day of June, 2008.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

the Motion in Limine (Record Document 20) is **MOOT**.